UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMEERICA,

        Plaintiff,

                                Criminal No. 23-cr-20607

vs.

                                Hon. Sean F. Cox

HAROLD EUGENE OUTLEY IV,

        Defendant.

                                          /

## GOVERNMENT'S SENTENCING MEMORANDUM

## I.      INTRODUCTION

Typically, a defendant's lack of criminal history is a good thing. However, in this case, Harold Outley used his relatively clean record to circumvent the criminal background check system so that he could purchase and resell firearms to others.

Outley may dispute knowing the circumstances for the individuals he repeatedly purchased the firearms for, but it is clear that at least 10 of the 27 weapons purchased by Outley ended up in the hands of criminals or were recovered by police shortly after his purchases. Even if Outley did not specifically know why individuals would be coming to him to purchase firearms instead of going to a legitimate retailer, the

inference should have been obvious—the purchasers would have been denied by the background check system.

The instant felony conviction has ended Outley's ability to reengage in the offense conduct. The parties calculate Outley's guidelines range at 24 to 30 months. After considering the factors set forth in 18 U.S.C. § 3553(a), the government recommends a sentence of 24 months, or the bottom of the guidelines as determined by the Court.

## II.    STATEMENT OF FACTS

In April 2022, ATF agents learned that Harold Outley was making numerous purchases of firearms within a short period of time, and some were being recovered by police. Agents reviewed four ATF Firearms Trace Summary Reports relating to Harold Outley. An ATF Firearms Trace Summary Report is a report that documents who originally purchased a firearm and who was later found to be in possession of the same purchased firearm. After reviewing purchase records, agents learned that Outley purchased 27 firearms from two Dunham's Sports stores but did not register any of the handguns with the State of Michigan, as required by state law. To date, ten of the firearms purchased

2

by Outley have been recovered by police in the possession of other individuals.

As an example, on April 1, 2021, Outley purchased a Glock, Model 43X, 9mm pistol from Dunham's Sports, a Federal Firearms Licensee (FFL) in Allen Park, MI. Only 23 days later, on April 26, 2021, the Detroit Police Department recovered the Glock pistol from a convicted felon.

Another pistol that Outley purchased in June of 2021, was actually connected to a shooting: A National Integrated Ballistic Information Network (NIBIN) report indicates that the firearm was traced to two shooting incidents. First, on August 25, 2021, a drive by shooting occurred on Outer Drive in Detroit. Law enforcement reports indicate that there were multiple shooters, and twenty 9mm casings were recovered from the scene. The NIBIN report indicates that at least one of the casings was tied to the firearm purchased by Outley two-and-a-half months earlier. Then, two weeks later on September 4, 2021, the firearm was recovered at the scene of a shooting at a Got Burger restaurant. The firearm was not believed to have been used in that shooting but was recovered under a bench in the lobby of the Got Burger after the shooting occurred while the scene was processed.

In September of 2021, Outley purchased another pistol that was used a month later by a man who pulled the gun during an argument and started shooting. The firearm was recovered from the shooter when he was arrested two days later.

Information regarding the specific arrangements, exact payments, and whether Outley knew specifically why he was being asked to purchase the firearms for others is unknown. Outley explained to investigators that he would be contacted by individuals that he knew from his neighborhood to purchase firearms and would receive payment that included a profit for each firearm he bought. Outley explained that this was a predominant source of his income during the timeframe where he purchased these weapons.

### III.   SENTENCING GUIDELINES

The government and defense counsel calculated the guideline range as 24 to 30 months. This is based on a base offense level of 12 under USSG § 2K2.1(a)(7) and a specific offense characteristic +6 for at least 25 but less than 99 firearms possessed under USSG § 2K2.1(b)(1)(C) and a three-level reduction for acceptance of responsibility: resulting in a total offense level of 15 and a criminal history level III.

The probation department calculated the guidelines higher relying on the 2023 sentencing guideline USSG § 2K2.1(b)(5)(B)(i)(I) which gives a +2 increase when a defendant purchases, sells, or transfers a firearm knowing or having reason to know his act would result in the receipt of the firearm or ammunition by an individual who was a prohibited person.

This language is amended from the 2021 guideline which enhanced "transfers to individuals whose receipt of the firearm would be unlawful," USSG § 2K2.1(b)(5), n. 13., which is defined as an individual who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. *Id.*

While the evidence supports the inference that Outley had reason to know he was purchasing firearms that were going to be transferred to individuals who could not legally buy for themselves, the guidelines in effect at the time of the offense had a more specific knowledge requirement than what may be met by the same generalized knowledge that would trigger the enhancement under the 2023 guidelines. In order to avoid a potential ex post facto issue, the government recommends applying the 2021 version of the guidelines, specifically USSG § 2K2.1(b)(5), and not including the enhancement in the guideline calculation. *See* USSG § 1B1.11(b)(1). This point only avoids the enhancement under the advisory guideline calculation.

The court should still consider the relevance of this behavior in examining the nature and circumstances of the offense when analyzing the §3553(a) factors.

## IV.   ARGUMENT

The government is requesting a sentence at the bottom of the sentencing guidelines as determined by the court.

While Outley had only a minor criminal history, he used his felony-free record to help others obtain firearms—some of whom would have been thwarted by a criminal background check system designed to keep guns out of the hands of dangerous people. The potential harm in Outley arming these individuals with his repeated purchases is impossible to know. The sentence in this case should account for the seriousness of this harm and deter others from engaging in similar conduct.

Because Outley is now a convicted felon, he will be unable to reengage in these purchases in the future. Further, since he has never been incarcerated for a significant period, a sentence of imprisonment at the bottom of the guidelines will demonstrate the just consequences of his crime and of enabling the crimes of others.

## V.    CONCLUSION

The government moves this Honorable Court to impose a sentence at the bottom of the guidelines as determined by the Court.

Respectfully submitted,

DAWN N. ISON
United States Attorney

s/Michael Taylor
Michael Taylor
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3211
(313) 226-9516
Dated: July 19, 2024                     michael.taylor3@usdoj.gov

## Certificate of Service

I hereby certify that on July 19, 2024, I caused the Sentencing Memorandum for the United States to be electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants of record.

s/Michael Taylor
Michael Taylor
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3211
(313) 226-9516
michael.taylor3@usdoj.gov